## STROUD *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 276.   Argued October 22, 1919.—Decided November 24, 1919.

A verdict of guilty as charged in the indictment, under an indictment charging murder in the first degree, is a conviction of murder in the first degree, and no less so because the jury adds "without capital punishment," as permitted by § 330 of the Criminal Code.   P. 17.

And when a sentence to life imprisonment, based on such a verdict, is reversed upon the defendant's application (the mandate calling for further proceedings,) he is not placed twice in jeopardy, in violation of the Fifth Amendment, when tried again, under the same indictment, found guilty as charged, but without qualification as to punishment, and sentenced to be hanged.   *Id.*

Motions for change of venue and to quash the jury panel, in a capital case, because of alleged local prejudice and of statements made to the District Judge by counsel for the Government and of the judge's

comments upon them, in the presence of the prospective jurors, are addressed to the discretion of the judge. P. 18.

Error in overruling a challenge for cause made by the defendant in a capital case is not ground for reversal if he excluded the objectionable juror by a peremptory challenge, and was permitted to exercise, in addition, more peremptory challenges than the statute allowed, the record not showing that any juror who sat upon the trial was objectionable in fact. P. 20.

A person committed a homicide while a prisoner in a penitentiary and afterwards, while still so incarcerated, voluntarily wrote letters which, under the practice and discipline of the institution, without threat or coercion, were turned over to the warden, who furnished them to the United States attorney. *Held,* that the use of the letters in the prosecution for the homicide was not violative of the constitutional provisions against compelling testimony from an accused and against unreasonable searches and seizures. P. 21.

Affirmed.

THE case is stated in the opinion. See also *post,* 380.

*Mr. Martin J. O'Donnell,* with whom *Mr. Isaac B. Kimbrell* was on the brief, for plaintiff in error.

*Mr. Assistant Attorney General Stewart,* with whom *Mr. W. C. Herron* was on the brief, for the United States.

MR. JUSTICE DAY delivered the opinion of the court.

Robert F. Stroud was indicted for the killing of Andrew Turner. The indictment embraced the elements constituting murder in the first degree. The homicide took place in the United States prison at Leavenworth, Kansas, where Stroud was a prisoner and Turner a guard. The record discloses that Stroud killed Turner by stabbing him with a knife which he carried concealed on his person.

Stroud was convicted in May, 1916, of murder in the first degree, and sentenced to be hanged. Upon confession of error by the United States District Attorney the Circuit Court of Appeals reversed this judgment. Stroud was

again tried at the May term, 1917, the jury in the verdict rendered found Stroud "guilty as charged in the indictment without capital punishment." Upon writ of error from this court the Solicitor General of the United States confessed error, and the judgment was reversed. The mandate commanded: "Such further proceedings be had in said cause, in conformity with the judgment of this court, as according to right and justice, and the laws of the United States ought to be had, the said writ of error notwithstanding." In pursuance of this mandate the District Court issued an order vacating the former sentence, and ordered a new trial. The trial was had, the jury found Stroud guilty of murder in the first degree as charged in the indictment, making no recommendation dispensing with capital punishment. Upon this verdict sentence of death was pronounced. This writ of error is prosecuted to reverse the judgment.

The case is brought directly to this court because of assignments of error alleged to involve the construction and application of the Constitution of the United States. The argument has taken a wide range. We shall dispose of such assignments of error as we deem necessary to consider in justice to the contentions raised in behalf of the plaintiff in error.

It is alleged that the last trial of the case had the effect to put the plaintiff in error twice in jeopardy for the same offense in violation of the Fifth Amendment to the Constitution of the United States. From what has already been said it is apparent that the indictment was for murder in the first degree; a single count thereof fully described that offense. Each conviction was for the offense charged. It is true that upon the second trial the jury added "without capital punishment" to its verdict, and sentence of life imprisonment was imposed. This recommendation was because of the right of the jury so to do under § 330 of the Criminal Code, 35 Stat. 1152; 10 U. S. Comp. Stats.,

§ 10504. This section permits the jury to add to the verdict, where the accused is found guilty of murder in the first degree, "without capital punishment," in which case the convicted person is to be sentenced to imprisonment for life. The fact that the jury may thus mitigate the punishment to imprisonment for life did not render the conviction less than one for first degree murder. *Fitzpatrick* v. *United States*, 178 U. S. 304, 307.

The protection afforded by the Constitution is against a second trial for the same offense. *Ex parte Lange*, 18 Wall. 163. *Kepner* v. *United States*, 195 U. S. 100, and cases cited in the opinion. Each conviction was for murder as charged in the indictment which, as we have said, was murder in the first degree. In the last conviction the jury did not add the words "without capital punishment" to the verdict, although the court in its charge particularly called the attention of the jury to this statutory provision. In such case the court could do no less than inflict the death penalty. Moreover, the conviction and sentence upon the former trials were reversed upon writs of error sued out by the plaintiff in error. The only thing the appellate court could do was to award a new trial on finding error in the proceeding, thus the plaintiff in error himself invoked the action of the court which resulted in a further trial. In such cases he is not placed in second jeopardy within the meaning of the Constitution. *Trono* v. *United States*, 199 U. S. 521, 533.

It is insisted that the court erred in not granting a change of venue. The plaintiff in error made a motion in the trial court asking such an order. The chief grounds for the application appear to have been that the testimony for the Government in the former trials had been printed and commented upon by the local press; that the evidence published was only such as the Government had introduced, and its wide circulation by the medium of the press created prejudice in the minds of the inhabitants of Leav-

enworth County against him, and that this prejudice existed to such an extent that the jury impanelled to try the case, though not inhabitants of Leavenworth County, were influenced more or less by the prejudice existing in that county against him; that at defendant's last trial the Government, by issuing pardons to prisoners who claimed to have witnessed the homicide, produced only such witnesses as tended to support its theory of the guilt of the defendant of the crime of first degree murder, and that at the same time the Government invoked the rule that prisoners in the penitentiary who witnessed the homicide, being still prisoners under conviction and serving terms of more than one year, were not qualified witnesses on behalf of the defendant; that the cause was set for trial at a special term of the court beginning on May 20, 1918, and on said date the defendant's counsel were engaged in the State of Missouri in the trial of a cause, that the attorneys advised the judge of their inability to be present during the week the case was set for trial; that an affidavit, setting forth the above facts, was filed with the court praying it not to enter upon the trial; that the counsel for the Government submitted an affidavit in which it was stated that counsel for the defendant, Stroud, stated their wish and desire to escape further responsibility for the conduct of the defense and expressed their hope that something would occur to make it unnecessary to appear longer in this cause in Stroud's behalf, and proposed that the Government consent that the defendant plead guilty to the charge of second degree murder, with the understanding that as a result thereof the court might sentence the defendant to prison for the remainder of his life; that said statement and affidavit were read in the presence and hearing of the special panel of prospective jurors in open court, said jurors being among those before whom the Government proposed to put the defendant upon trial for murder; that at the close of the reading of the affidavit in the presence of the pros-

pective jurors, the District Judge stated from the bench that in view of the statements set forth in the affidavit he was compelled to feel that counsel had acted unprofessionally by not being there in court, at least one of them; that said facts were commented upon by the public press of Leavenworth County, and created prejudice against defendant and his attorneys; that defendant never authorized any person or attorney to make any such proposal to attorneys for the Government, concerning a plea of guilty, for the reason that the defendant was not guilty of the charge contained in the indictment, or of murder in any degree and that unless the jurors who had theretofore attended the court during the week of May 20, 1918, were discharged by order of the court the defendant could not enjoy the right of a public trial by an impartial jury secured to him by the Constitution, and prayed an order transferring the case to another division of the district. The court overruled the motion except in so far as it asked for an exclusion of inhabitants of Leavenworth County as jurors, to that extent it was sustained. The motion to quash the panel, called to act as jurors, was made on like grounds, and was also overruled.

The division in which Leavenworth County is situated consists of fifty counties, and, after hearing these applications, the District Court excluded persons from the jury who were residents of Leavenworth County, and refused to quash the panel upon the grounds alleged. Matters of this sort are addressed to the discretion of the trial judge, and we find nothing in the record to amount to abuse of discretion such as would authorize an appellate court to interfere with the judgment. *Kennon* v. *Gilmer*, 131 U. S. 22, 24.

Certain jurors were challenged for cause upon the ground that they were in favor of nothing less than capital punishment in cases of conviction for murder in the first degree. It may well be that as to one of these jurors, one

Williamson, the challenge should have been sustained. This juror was peremptorily challenged by the accused, and did not sit upon the jury. The statute, in cases of this character, allowed the accused twenty peremptory challenges; it appears that he was in fact allowed twenty-two peremptory challenges. Thus his right to exercise peremptory challenges was not abridged to his prejudice by an erroneous ruling as to the challenge for cause. In view of this fact, and since there is nothing in the record to show that any juror who sat upon the trial was in fact objectionable, we are unable to discover anything which requires a reversal upon this ground. See *Hayes* v. *Missouri*, 120 U. S. 68, 71; *Hopt* v. *Utah*, 120 U. S. 430; *Spies* v. *Illinois*, 123 U. S. 131; *Holt* v. *United States*, 218 U. S. 245, 248.

Certain letters were offered in evidence at the trial containing expressions tending to establish the guilt of the accused. These letters were written by him after the homicide and while he was an inmate of the penitentiary at Leavenworth. They were voluntarily written, and under the practice and discipline of the prison were turned over ultimately to the warden, who furnished them to the District Attorney. It appears that at the former trial, as well as the one which resulted in the conviction now under consideration, application was made for a return of these letters upon the ground that their seizure and use brought them within principles laid down in *Weeks* v. *United States*, 232 U. S. 383, and kindred cases. But we are unable to discover any application of the principles laid down in those cases to the facts now before us. In this instance the letters were voluntarily written, no threat or coercion was used to obtain them, nor were they seized without process. They came into the possession of the officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution. Under such circumstances there was neither

testimony required of the accused, nor unreasonable search
and seizure in violation of his constitutional rights.

Other objections are raised in the elaborate brief filed in
behalf of the plaintiff in error. We do not find it necessary
to discuss them. In view of the gravity of the case they
have been examined and considered with care, and we are
unable to find that any error was committed to the preju-
dice of the accused.

*Affirmed.*