Joseph Stone, J.
In an amended complaint dated August 3, 1972, Susan R. Russell of 1 Perry Street, New York City deposed that from May 13 to July 17,1972 at 1 Perry Street, Apt. No. 1A, the defendant, Eugene Manganero, committed the offense of aggravated harassment in violation of section 240.30 of the Penal Law in that: ‘ Deponent states that the defendant made several telephone calls to the deponent, that said calls served no legitimate purpose and that said calls annoyed, alarmed and threatened the deponent. Deponent further states that the defendant sent numerous letters to the deponent and to deponent’s daughter Rita Russell aged 8 and that said letters served no legitimate purpose and threatened, annoyed and alarmed the deponent.”
Aside from the phone calls, the facts are that while defendant was incarcerated on another charge he addressed a series of letters to Susan R. Russell. At the hearing on the motion to suppress she identified People’s Exhibit 1, which consisted of 44 letters addressed to her and two to her daughter, Rita, age 8. The defendant’s name, Gene Manganero, and an address, either 125 White Street, N. Y. C. or 1 Perry Street, N. Y. C. (where complainant resides) appeared as the sender on the upper left-hand corner of each envelope. Each of these envelopes, which contained a letter, bore the initials ‘ CM243 ’ ’ and a date in small handwriting in the lower left side of the envelope. Some of these envelopes also had a numeral from 1 to 5 encircled next to the marking “ CM243 ”. Forty-two of these letters were postmarked with various dates from June .15, 1972 through July 10, 1972. Four of these letters were not postmarked.
*382 The complainant also identified People’s Exhibit 2, which consisted of 13 letters addressed to her by defendant. Eleven of these envelopes were postmarked with various dates from June 15, 1972 through July 17, 1972. The remaining two envelopes were partially postmarked. On the envelope bearing postmark June 15, 1972, the name Gene Manganero, 125 White Street, New York City appeared on the upper left-hand corner as the sender. On 11 of these letters there appeared the name Gene Manganero, 1 Perry Street, N. Y. C. as the sender. One envelope did not have a return address.
The complainant also identified People’s Exhibit 3, which consisted of 19 letters addressed to her by defendant. The defendant’s name, Gene Manganero, 125 White St., N. Y. C. appeared on the upper left-hand corner of 17 of these letters as the sender. The name Gene Manganero, 1010 Hazen Street, East Elmhurst, appeared as the sender on one envelope, and one envelope did not have a return address. These 19 -letters were postmarked with various dates from May 19,1972 through June 13,1972.
The complainant also testified that she received all of the letters comprising People’s Exhibits 1 through 3 in an unopened condition through the United States mail. She opened each envelope which contained a letter written by the defendant, whose handwriting she recognized. She then submitted these letters to the District Attorney’s office, New York County. During the time that she received these letters she complained about them to various officials of the Department of Correction, New York City and Assistant District Attorney Handler, New York County.
Captain Constantine Mellon testified that he was formerly personnel officer' in charge of administration and security at the Manhattan House of Detention for Men (The Tombs). In addition he was also in charge of checking all outgoing mail at this institution. According to Captain Mellon the defendant had been transferred from the New York City Correctional Institution for Men at Bikers Island to the Tombs on May 18, 1972. In the early part of June, Captain Mellon was advised by Assistant District Attorney Handler that complainant was receiving annoying letters from defendant. Thereafter, after consultation with counsel for the Department of Correction, it was decided to identify all mail which defendant was addressing to Susan B. Bussell. Whenever he was on duty and he checked mail, Captain Mellon would place his initials, shield number and date on the left-hand lower corner of each envelope addressed to complainant by defendant. In some cases where defendant was send *383 ing more than one letter on a particular day, Captain Mellon would number each letter by placing a successive number, which he circled, in proximity .to his initials and shield number. Captain Mellon identified his initials, shield number, date and encircled numbers on the 46 letters received in evidence as People’s Exhibit 1. He testified that he did not open any of these letters, nor did he scan them through any machine and that he deposited them in the United States mail. Captain Mellon also testified that neither.he nor anyone else under his supervision opened or scanned any letters forwarded by defendant while he was incarcerated. On five or six occasions Captain Mellon reported to Assistant District Attorney Handler that the defendant had addressed letters to Susan B. Bussell, and that these letters had been forwarded to her.
Defendant moves to suppress all letters, which comprise People’s Exhibits 1, 2 and 3, and which are in part the subject of the complaint against defendant. He moves to suppress “ all letters which were seized as a result of an illegal search and seizure effected by agents of the Department of Correction and/or the Police Department and/or the District Attorney’s office and/or the complaining witness and/agents thereof.” More particularly, he now moves to suppress those letters, scrutinized by the Department of Correction, on which Captain Mellon placed his initials, shield number and date. Defendant has based his motion on the ground that defendant’s constitutional rights have been violated.
The court is not unaware that an inmate in a penal institution should be allowed a reasonable and proper correspondence with the courts, public officials, his attorney, members of his family, and, at times, with others. But because of the necessity of discipline and security necessary to the administration of a prison, such correspondence must be subject to a degree of censorship to be certain of its reasonableness and propriety. Control of mail to and from an inmate is an essential adjunct of prison administration and maintenance. (McCloskey v. State of Maryland, 337 F. 2d 72 [1964]; United States ex rel. Thompson v. Fay, 197 F. Supp. 855 [S.D.N.Y., 1961]; Henry v. Ciccone, 315 F. Supp. 889 [W.D. Mo.]; Spires v. Dowd, 271 F. 2d 659 [7th Cir., 1959]; Reilly v. Hiatt, 63 F. Supp. 477 [1945].)
In Stroud v. United States (251 U. S. 15 [1919]), the court held that where letters, written while incarcerated, were voluntarily written and there were no threats or coercion to write them and came into possession of prison authorities under established rules reasonably designed to promote discipline, such letters *384 could be used in evidence against the defendant and none of his rights were violated.
Since Stroud, the right of prison officials to censor mail has been upheld (Lanza v. New York, 370 U. S. 139; Lee v. Tahash, 352 F. 2d 970; Spires v. Dowd, supra; United States ex rel. Thompson v. Fay, supra) although it has been limited to some extent.
In Matter of Brabson v. Wilkins (19 N Y 2d 433 [1967]), the court forbade the withholding of any communication addressed to the court, Federal or State officials, or defendant’s attorney in regard to legal matters.
In Sostre v. McGinnis (442 F. 2d 178 [1971], cert. den. sub nom. Sostre v. Oswald, 404 U. S. 1049 [1972]), it was held that censorship of letters to the courts, public officials or attorneys violates a prisoner’s rights but the court did not prohibit prison officials from reading mail — incoming or outgoing — to ascertain whether they contain contraband or other illegal correspondence.
In the case at bar we are not dealing with correspondence with the courts or attoiaieys. We are dealing with personal letters to a person who had no desire to receive them and made complaints concerning them. If the Department of Correction or the District 'Attorney’s office ignored such complaints, they would be derelict in their duty. Furthermore, there was no censorship of defendant’s letters although it was- in the province of the officials to censor such letters. No letters were seized nor opened nor read by any governmental official. Accordingly, no constitutional rights of the defendant were violated, and the letters should be allowed into evidence.
Motion to suppress denied. "