**UNITED STATES of America, Appellee,**

v.

**Hilton Jerry KELTON, Appellant.**

No. 85–1987.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1986.

Decided May 14, 1986.

Rehearing Denied June 11, 1986.

Robert G. Duncan, Kansas City, Mo., for appellant.

Linda L. Sybrant, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

PER CURIAM.

Kelton appeals his conviction on four counts of distributing cocaine, asserting that it was error to allow the government to introduce into evidence letters he had written while in custody at the United States Penitentiary, Leavenworth, Kansas. For the reasons stated below, we affirm the decision of the district court.[1]

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1.  The HONORABLE ELMO B. HUNTER, United States District Judge for the Western District of Missouri.

While awaiting the trial of his conviction on four counts of distributing cocaine, Kelton was incarcerated at the penitentiary, serving time for previous federal convictions. During May and June of 1985, Kelton wrote and mailed numerous letters from the prison. Some seventy-four letters were inspected, read, and copied by prison officials at the penitentiary. Seven letters were eventually offered and admitted into evidence at trial. Those seven letters contained Kelton's attempts to identify who was working for the government as an informant against him, and made numerous threats against all those who would be a witness against him. On July 11, 1985, the jury returned verdicts of guilty on all four counts.

The single issue that Kelton raises on appeal is whether the trial court erred in admitting into evidence letters written by Kelton that prison officials had read and copied before mailing. Kelton argues that the letters should have been suppressed because they were seized in violation of his fourth amendment rights.

Prison officials are authorized, under the regulations of the Bureau of Prisons, to read and copy outgoing prisoner mail. 28 C.F.R. § 540.13 (1985) provides in part that:

> (d) Outgoing mail in Security Level 4, 5, and 6 and administrative institutions, except "special mail," may not be sealed by the inmate and may be inspected and read by staff.
>
> (e) The Warden may reject correspondence sent by or to an inmate if it contains any of the following:
>
> (1) ...

> (2) Information ... of plans to commit illegal activities, or to violate institution rules.
>
> (3) ...
>
> (4) Threats, extortion, obscenity, or gratuitous profanity; ....

The penitentiary at Leavenworth is a Level 5 institution. Moreover, 28 C.F.R. § 540.-11(c) (1985) provides in part that:

> Correspondence containing threats, extortions, etc., may result in prosecution for violation of federal laws. When such material is discovered, the inmate may be subject to disciplinary action, the written material may be copied, and all material may be referred to the appropriate law enforcement agency for prosecution.

There can be no doubt that the penitentiary officials were acting within the scope of their authority, as provided by the Bureau of Prisons' regulations, when these letters were copied and forwarded to the United States Attorney. Furthermore, the prison officials were not under any obligation to inform Kelton that they were reading and copying his mail.[2]

The actions of the prison officials were particularly justified in the light of the fact that in the letters Kelton states that informants would not testify against him at trial because of this threatened retaliation. He further makes reference to "my crew," his street gang which would carry out his threats and potentially kill whoever would testify against him.

Kelton argues that the regulations that authorize prison officials to read and copy inmate mail violate his fourth amendment right to privacy. In *Stroud v. United*

---

2. Another related provision, 28 C.F.R. § 540.12 provides in part that:

> When correspondence is rejected because of content, the Warden shall *notify the sender in writing of the rejection and the reasons for the rejection.* The Warden shall also give notice that the sender may appeal the rejection. The Warden shall also notify an inmate of the rejection of any letter addressed to him, along with the reasons for the rejection and notify him of the right to appeal the rejection. The Warden shall refer an appeal to an officer other than the one who originally disapproved the correspondence. The Warden

> shall return rejected correspondence to the sender unless the correspondence includes plans for or discussion of commission of a crime or evidence of a crime, in which case there is no need to return the correspondence or give notice of rejection, and the correspondence should be referred to appropriate law enforcement authorities. Also, contraband need not be returned to the sender. (Emphasis added.)

Kelton's mail was not censored; therefore, he was not entitled to notice under this regulation. *See Wiggins v. Sargent,* 753 F.2d 663, 667 (8th Cir.1985).

*States,* 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), the Supreme Court held that interception by prison personnel and use in evidence by the prosecution of certain letters containing incriminating material written by a federal prisoner, who had been charged with the murder of a prison guard, did not violate the fourth amendment rights of the accused. The Court noted that the letters were voluntarily written and that no threat or coercion was used to obtain them. The Court added that the letters came into the possession of officials of the penitentiary under established practice, reasonably designed to promote the discipline of the institution. *Id.* at 21–22, 40 S.Ct. at 52–53.

More recent cases since *Stroud* have held that a prisoner's fourth amendment rights are not violated when his mail is inspected by jail officials. *See Smith v. Shimp,* 562 F.2d 423, 427 (7th Cir.1977); *U.S. v. Wilson,* 447 F.2d 1, 8 n. 4 (9th Cir.1971), *cert. denied sub nom. Polk v. United States,* 404 U.S. 1053, 92 S.Ct. 723, 30 L.Ed.2d 742 (1972). Still more recent cases have limited *Stroud,* finding violations of the fourth amendment absent a showing of a justifiable purpose of imprisonment or prison security. *See Meadows v. Hopkins,* 713 F.2d 206, 208–11 (6th Cir. 1983); *Golden v. Coombe,* 508 F.Supp. 156, 159–60 (S.D.N.Y.1981).

It is apparent, even if *Stroud* does not retain all of its vitality, that the actions of the prison officials were justified in light of the legitimate objectives of the prison system. In *Lyons v. Farrier,* 727 F.2d 766, 769 (8th Cir.1984), this court held that, although prisoners retain some fourth amendment rights while in prison, these rights are limited by institutional security needs and the prisoner's reduced expectation of privacy.

It is clear that in the interests of deterring Kelton's threatened criminal activity it was permissible for the prison officials to open and copy his outgoing mail. Because prison officials acted pursuant to federal regulations, and acted within the limits of the fourth amendment, suppression of Kel-

ton's letters was not warranted. We therefore affirm the judgment of the district court.