**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Justin WHALIN, Defendant–Appellant.**

**No. 93CA0657.**

Colorado Court of Appeals,
Div. III.

June 2, 1994.

Rehearing Denied July 14, 1994.

Certiorari Denied Nov. 29, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Jeffrey R. Edelman, P.C., Jeffrey R. Edelman, Denver, for defendant-appellant.

Opinion by Chief Judge STERNBERG.

The defendant, Justin Whalin, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child. His principal contention on appeal appears to be that the court erred in receiving into evidence letters containing inculpatory statements written by him while he was a pretrial detainee at a county detention facility. He also contends that the court erred in

granting the prosecution a continuance, in not suppressing as involuntary an inculpatory statement, and in sentencing him in the aggravated range. We affirm.

## I.

■ Presenting an issue of first impression in Colorado, defendant asserts that his correspondence to another inmate was inadmissible at trial because the letters were improperly seized in violation of his Fourth Amendment and First Amendment rights. We do not agree.

While defendant was being held in the county detention facility, he received letters from an inmate in the Department of Corrections. Defendant wrote letters in response which contained incriminating statements. Defendant's letters were reviewed by an employee of the detention facility pursuant to a written policy. The letters were then copied and the copies forwarded to the District Attorney's office. Several statements from these letters were admitted into evidence during the trial.

In *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), the United States Supreme Court held that the Fourth Amendment does not prohibit the search and seizure of an inmate's mail without a warrant for use as evidence against the inmate in a criminal trial. However, later decisions addressing First Amendment claims brought by inmates in civil rights cases appear to limit a blanket application of the rule espoused in *Stroud. See, e.g., Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (prison rule restricting correspondence must: (1) further important or substantial governmental interest unrelated to suppression of expression; and (2) be no greater than is necessary to the protection of the particular government interest).

The cases decided since *Stroud* often blur the distinctions between an inmate's Fourth Amendment and First Amendment rights. Generally, however, *Stroud* still applies in those instances in which a "reasonable justification" exists for the inspection of an inmate's correspondence. *See United States v. Brown*, 878 F.2d 222 (8th Cir.1989); *United States v. Kelton*, 791 F.2d 101 (8th Cir.1986), *cert. denied*, 479 U.S. 989, 107 S.Ct. 583, 93 L.Ed.2d 586 (1986),; *United States v. Whalen*, 940 F.2d 1027 (7th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991).

■ Regardless of what test is applied, the majority view is that correctional officials may examine an inmate's nonlegal mail. *See generally* M. Mushlin, *Rights of Prisoners* § 8.13 at 403 (2d ed. 1993) (there is little dissent from the view that inmates' incoming and outgoing mail may be examined without violating Fourth Amendment). Thus, we hold that a prisoner's Fourth Amendment right to be free from an unreasonable search and seizure is not violated when a prisoner's outgoing correspondence is examined and seized by correctional officials pursuant to an established practice that is reasonable and the intrusion is no greater than necessary to protect a legitimate governmental interest. *Procunier v. Martinez, supra; Stroud v. United States, supra; United States v. Brown, supra.*

That the trial court applied such a reasonableness test in this case is apparent from its statement that it was "balancing ... the need for the particular search against the invasion of personal rights that the search entails." The trial court determined that the jail's policy of reviewing a prisoner's mail is a reasonable and legitimate policy designed to further institutional security and is not unduly intrusive. As a result, the trial court concluded that defendant's Fourth Amendment rights were not violated. We agree with the trial court's determination.

Defendant contends, however, that this case is distinguishable from the authority upon which the trial court relied.

■ First, he argues that his status as a pretrial detainee rather than a convicted inmate provides him with a heightened Fourth Amendment privacy interest. However, contrary to this assertion, the principle that a correctional official may examine and seize a prisoner's mail applies equally to pretrial detainees and convicted prisoners. *State v. Cuypers*, 481 N.W.2d 553 (Minn.1992), *citing*

*Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

The defendant next contends that the jail employee who read the incoming letter addressed to him did not have "probable cause" to do so; thus, defendant reasons, the content of the incoming letter could not serve as a basis to monitor further defendant's incoming and outgoing mail. However, a prisoner's Fourth Amendment rights are extremely limited. *See generally* William A. Harrington, Annotation, *Fourth Amendment as Protecting Prisoner Against Unreasonable Searches and Seizures,* 32 A.L.R.Fed. 601 (1977). Thus, an inmate is protected only against unreasonable searches made by correctional authorities. *People v. Valenzuela,* 41 Colo.App. 375, 589 P.2d 71 (1978). Hence, the jail employee here was not required to have probable cause in order to examine defendant's mail.

Defendant further argues that the jailers had no reasonable justification or legitimate governmental interest to justify the examination of his mail. We disagree.

Regulations that authorize prison officials to read and copy inmate mail do not violate Fourth Amendment rights. *United States v. Kelton, supra.* The letters in this case came into the possession of jail officials under an established policy which was designed to promote discipline and to prevent criminal acts. Thus, balancing defendant's rights against the need for properly administering the jail, there was reasonable justification to seize the mail. *See United States v. Kelton, supra.*

Contrary to defendant's contention, we conclude that there is ample evidentiary support in the record to support the trial court's findings of fact. Thus, they are binding on appeal. *See People v. Dover,* 790 P.2d 834 (Colo.1990).

Finally, defendant contends that the monitoring of his correspondence violated his First Amendment right of free speech. Again, we disagree.

The jail personnel did not deprive defendant of his correspondence through censorship or refusal to forward any letters; instead, the correspondence was inspected and copied. Therefore, we are unpersuaded that any First Amendment violation occurred. *See Clark v. Schumacher,* 109 Or.App. 354, 820 P.2d 3 (Or.App.1991) (regulations allowing inspection of mail do not violate First Amendment because correspondence is not prohibited); *Walker v. Navarro County Jail,* 4 F.3d 410 (5th Cir.1993) (inmate's allegation that legal mail was opened and read but not censored does not rise to level of constitutional violation).

Moreover, defendant's correspondence was addressed to another incarcerated individual. A prisoner has fewer First Amendment rights when he or she seeks to correspond with another prisoner. *See generally Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

## II.

The defendant also asserts error in the action of the trial court in granting the prosecution's motion to continue the trial date and in setting the date for trial at a time that violated his statutory right to speedy trial. We perceive no errors.

Defendant was arraigned on May 13, 1992, and entered a plea of not guilty. The case was set for trial to commence on October 26, 1992. In June of that year, however, defendant moved for appointment of an independent mental health expert. The motion was granted, and the expert was retained.

In September, an evidentiary hearing was held on a motion to suppress filed by defendant. The mental health expert attended this hearing in order to listen to testimony to assist him in formulating his opinion. This hearing was continued to October 1, 1992, to complete the presentation of testimony. Defendant testified as to statements he had made during questioning by a police officer. The expert, who had been endorsed as a defense witness earlier, testified that defendant was developing Ganser's syndrome, a mental condition which purportedly rendered defendant's statements to the police officer involuntary.

The prosecution moved for a continuance on October 14, 1992. As the basis for the motion, the People cited defendant's presentation of a defense predicated on Ganser's syndrome. The prosecution argued that it had not been notified of the defense and needed time to arrange for expert testimony and further analysis of the alleged disorder. The motion for continuance was granted and a new trial date of January 19, 1993, was set.

■ Section 18–1–405(1), C.R.S. (1986 Repl.Vol. 8B) requires that a defendant be brought to trial within six months from the date of entry of a plea. If that period expires without extension or exclusion, the pending charges must be dismissed. However, the statute excludes from the six month period a time not exceeding six months which results from a continuance granted at the request of the prosecuting attorney without the consent of the defendant if the continuance is needed to prepare the prosecution and if exceptional circumstances of the case justify the extension. Section 18–1–405(6)(g)(II), C.R.S. (1986 Repl.Vol. 8B). In such a situation, the court must enter specific findings on the record. *People v. Goodpaster,* 742 P.2d 965 (Colo.App.1987); Crim.P. 48(b)(6)(VII)(B).

The trial court concluded that the circumstances present in this case concerning the endorsement of the mental health expert and the potentiality for the presentation of a defense based on the allegation that defendant suffered from Ganser's syndrome constituted exceptional circumstances justifying the continuance. We find the justification reasonable under these circumstances and conclude the granting of the motion for continuance meets all technical requirements. *See People v. Goodpaster, supra.* Thus, there was no error in granting the continuance, and defendant's speedy trial rights were not violated.

### III.

■ The defendant argues that certain inculpatory statements made to an investigator were involuntary, that he had not waived his *Miranda* rights, and that the court erred in admitting the statements into evidence. We do not agree.

The trial court reviewed the evidence and concluded that there was no coercive conduct by the police to induce the defendant's statement and, thus, admitted the statement into evidence. In so doing, the trial court properly exercised its discretion, and we may not disturb the findings of that court on review. *People v. Jensen,* 747 P.2d 1247 (Colo.1987).

The defendant presented expert testimony indicating that he suffered from a mixed personality disorder, an adjustment disorder, a mixed adjustment disorder with mixed disturbance of emotions, and conduct attributable to Ganser's syndrome. He argues that, because of these conditions, he neither voluntarily waived his rights nor voluntarily confessed to the crime. In support of this contention, defendant would have us apply the rule of *People v. Connelly,* 702 P.2d 722 (Colo.1985) and exclude his statements as being involuntary.

Defendant acknowledges that, in *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), the United States Supreme Court reversed *People v. Connelly, supra;* however, he urges us to exclude the statements by adhering to the first *Connelly* ruling by application of the Colorado constitution, rather than the United States Constitution.

■ We agree with the basic premise of defendant's argument, *i.e.,* that state courts are free to construe their constitution to afford greater protections than those provided for by the United States Constitution. *Millis v. Board of County Commissioners,* 626 P.2d 652 (Colo.1981). Indeed, it has been held that it is our responsibility to consider whether our constitution mandates greater protections than those required by the U.S. Constitution. *People v. Marcy,* 628 P.2d 69 (Colo.1981).

■ That being said, however, we must bear in mind that federal interpretations of the U.S. Constitution are helpful in interpreting similar provisions in our constitution. *United Bank v. Shavlik,* 189 Colo. 280, 541 P.2d 317 (1975).

Applying these principles of interpretation, we conclude that there is no reason not to

adopt and apply the reasoning and holding of the United States Supreme Court in *Colorado v. Connelly, supra,* to the similar provisions of our constitution. Thus, we hold that both the waiver of *Miranda* rights and the statements made were voluntary; thus, the statements were properly admitted into evidence.

## IV.

■ The defendant's final contention of error is that the court abused its discretion in sentencing him to a term of incarceration of sixteen years. We do not agree.

■ Sentencing involves an exercise of discretion by the trial judge, and a sentence imposed will not be easily overturned absent a showing of a clear abuse of that discretion. *People v. Watkins,* 684 P.2d 234 (Colo.1984). The sentencing court must consider numerous, sometimes competing factors, bearing on the sentencing decision, and must arrive at a synthesis that is reflective of the interests of society and of the defendant. *Rocha v. People,* 713 P.2d 350 (Colo.1986); *People v. Swepston,* 822 P.2d 510 (Colo.App.1991).

■ Relevant factors to be considered include the nature of the offense, the character of the offender, the public interest in safety, and deterrence of others. *Flower v. People,* 658 P.2d 266 (Colo.1983). Rehabilitation of the defendant is but one of many considerations to be reviewed. *People v. Warren,* 200 Colo. 110, 612 P.2d 1124 (1980); *People v. Swepston, supra.* And, a sentencing court may consider conduct that has not been the subject of a criminal conviction and may consider juvenile offenses. *People v. McGregor,* 757 P.2d 1082 (Colo.App.1987).

The crime involved here was a Class 4 felony. The presumptive range of sentences for such felonies is two to eight years, and up to sixteen years in the aggravated range. The trial court found aggravating circumstances in this case, noting that defendant had two previous juvenile adjudications relating to sexual assault on minors, that he had a prior unrelated felony conviction, and that he had been released from incarceration less than six months prior to the sexual assault in this case. The court also referred to threats defendant made to the district attorney, to the victim, and to a mental health professional.

While defendant indicated a desire to submit to a rehabilitation program, the trial court found such undertaking less than credible in view of statements expressed in a letter defendant wrote after the verdict was returned. In the letter, defendant stated, "I love young boys and there's not a dam (sic) thing anyone can do about it."

Based on these factors, the sentencing court concluded that defendant posed a threat to society and sentenced him to the maximum period allowable in the aggravated range, which was the sentence recommended in the presentence report. We conclude that there was support in the record for the trial court's exercise of discretion in sentencing defendant to the maximum term.

The judgment and sentence are affirmed.

JONES and KAPELKE, JJ., concur.