JiCIACCIO, Judge.
The appellant, Dawn Bullock, was charged with simple possession of cocaine and pled not guilty. Her motion to suppress the evidence was heard and denied by the trial court. Appellant withdrew her prior plea of not guilty and pled guilty as charged, reserving her right pursuant to State v. Crosby, 338 So.2d 584 (La.1976), to appeal the trial court’s ruling on the motion to suppress the evidence. She was sentenced to serve three years at hard labor. However, she later pled guilty to a multiple bill; her sentence was vacated; and she was sentenced as a second offender to serve three years at hard labor. In this appeal, she argues that the trial court *1075 erred when it denied her motion to suppress the evidence.
The appellant was arrested during the execution of a warrant for a house in which she was found. According to the affidavit forming the basis for the warrant, police officers received a tip on May 11, 1994, from a reliable confidential informant concerning sales of cocaine from 3101 Palmyra Street by Willie Cole. The C.I. indicated that Cole had an established clientele who would purchase cocaine from Cole at that address, and the C.I. offered to make a controlled purchase from Cole.
The officers checked the N.C.I.C. computer, which indicated that Cole was on probation for possession of cocaine. Cole also had prior arrests for possession with the intent to distribute cocaine, possession of cocaine and marijuana, armed robbery, and issuing worthless cheeks.
|2The informant met with the officers, was searched, and then was given money to make a controlled purchase from Cole. The officers drove the C.I. to the area of 3101 Palmyra and watched while the C.I. entered the residence and then subsequently reemerged. The C.I. met with the officers and turned over a rock-like substance which tested positive for cocaine. The C.I. told the officers that Cole sold him the rock of cocaine.
Based upon this information, the officers obtained a search warrant for 3101 Palmyra, which they executed on May 12th. They knocked on the door, and when no one answered, they forced their way in through a door which had been barricaded with a large piece of furniture. Inside the house, they found Myrtis Taylor in the bathroom trying to flush down the toilet a plastic bag containing what was later found to be cocaine. The officers found Cole and the defendant Dawn Bullock lying on a bed in a bedroom. The officers also found a gun in the bedroom. Because the officers knew that Cole had a prior felony conviction, they placed him under arrest for being a convicted felon in possession of a firearm. When the officers learned the defendant also had a prior felony conviction, they also placed her under arrest for the same charge.
Both officers at the suppression hearing testified that the C.I. had told the police that the females living in the house sometimes hid cocaine in their vaginas, although one officer admitted that this information was not included in the search warrant affidavit. A female DEA agent took the defendant into a bathroom, where she had the defendant undress and spread her legs. The agent testified that she could see the end of a plastic bag sticking out from the defendant’s vagina. The agent pulled out the bag, which contained cocaine. She also conducted a body cavity search and ^discovered yet another bag of cocaine in the defendant’s vagina. The agent denied conducting a body cavity search of any of the three other females who were found in the house at the time the search warrant was executed. However, another female who was present in the house testified that all four females were subjected to this type of search.
A review of the record for errors patent reveals there are none.
By her sole assignment of error, the appellant contends that the trial court erred by denying her motion to suppress the evidence. Specifically, she argues that while the officers had a warrant to search the house, the warrant did not allow them to conduct a body cavity search on her. She notes that the warrant for 3101 Palmyra specifically excluded the persons of people located at that address, and the State did not set forth sufficient reason for the warrantless body cavity search.
The appellant is correct that the warrant for the search of the house did not authorize the body cavity search of her. Thus, the search which led to the discovery of the cocaine in her vagina was a warrantless search. At the time of the search, the appellant was under arrest for being a convicted felon in possession of a firearm. However, the body cavity search exceeded the scope of a search incident to arrest, as authorized by cases such as State v. Wilson, 467 So.2d 503 (La.1985), cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985), and Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
*1076 Similarly, in State v. Fontenot, 383 So.2d 365 (La.1980), the Louisiana Supreme Court considered the legality of a warrantless body cavity search other than of the mouth. There, the defendant and her friend had obtained a bottle of pills using a suspected illegal prescription, and were |4stopped and placed in a police car. A subsequent strip search of both suspects failed to reveal the pill bottle. The defendant’s companion then told an officer that the defendant had secreted the bottle in her vagina. The defendant and her companion were then taken to a hospital, where a pelvic examination revealed the pill bottle in the defendant’s vagina.
On appeal, the Court found that the war-rantless search of the defendant’s vagina was illegal. The Court stated:
The government’s right to search the person of the accused when legally arrested to discover and seize the fruits or evidence of crime has little applicability to searches involving intrusions beyond the body’s surface. Such intrusions are forbidden by the Fourth Amendment unless (1) there is a clear indication such evidence will be found; (2) the search is authorized by a warrant issued by a neutral and detached magistrate, absent an emergency which threatens destruction of the evidence during the delay necessary to obtain a warrant; and (3) the search or intrusion is performed in a reasonable manner. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
State v. Fontenot, 383 So.2d at 367.
The Court found that because there were no exigent circumstances which prevented the officers from obtaining a warrant to search the defendant’s vagina, the warrantless search was illegal. The Court also found that the defendant’s acquiescence to the search did not amount to a valid consent to submit to the search.
Here, as in Fontenot, the body cavity search of the appellant exceeded the scope of a search incident to her arrest for being a convicted felon in possession of a firearm. However, contrary to the appellant’s assertions, the fact that the search was illegal at the time it was conducted does not automatically mean that the evidence seized pursuant to the search must be ^suppressed. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Edüd 441 (1963). In United States v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980), the Court noted there are three exceptions to the Wong Sun exclusionary rule: the independent source doctrine, the inevitable discovery doctrine, and the attenuation doctrine. See also State v. Welch, 449 So.2d 468 (La.1984); State v. Irby, 93-2220 (La.App. 4th Cir. 2/4/94), 632 So.2d 801.[1]
The appellant was already under arrest for being a convicted felon in possession of a firearm. As noted by the trial court, as a matter of course she would have been subjected to a strip search and a body cavity search at Central Lockup, especially given the fact that the officers had been told that the females at the house sometimes hid cocaine in their vaginas. Thus, the cocaine would have inevitably been discovered even if the appellant had not been searched at the house. Therefore, because any subsequent warrantless body cavity search at Central Lockup would have been legal, then the cocaine found as a result of the search at the house need not be suppressed.
As quoted above, the Court in Fontenot stated that a warrantless body cavity search violated the Fourth Amendment to the U.S. Constitution in the absence of exigent circumstances. However, in Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the U.S. Supreme Court held that body cavity searches of inmates for contraband, conducted in penal institutions after every contact visit with a person from outside the institution, do not necessarily violate the Fourth Amendment. In discussing the rationale for such searches, the Court noted the diminished expectation of privacy which Ran inmate has and stated:
Admittedly, this practice instinctively gives us the most pause. However, assuming for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections *1077 facility, see Lanza v. New York, [370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) ]; Stroud v. United States, 251 U.S. 15, 21, 40 S.Ct. 50, 52, 64 L.Ed. 103 (1919), we nonetheless conclude that these searches do not violate that Amendment. The Fourth Amendment prohibits only unreasonable searches, Carroll v. United States, 267 U.S. 132, 147, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925), and under the circumstances, we do not believe that these searches are unreasonable.
The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted, [citations omitted] A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete them in body cavities are documented in this record. App. 71-76, and in other cases. E.g., Ferraro v. United States, 590 F.2d 335 (CA 6 1978); United States v. Park, 521 F.2d 1381, 1382 (CA 9 1975). That there has been only one instance where an MCC inmate was discovered attempting to smuggle contraband into the institution on his person may be more a testament to the effectiveness of this search technique as a deterrent than to any lack of interest on the part of the inmates to secrete and import such items when the opportunity arises.
Bell v. Wolfish, 441 U.S. at 558-559, 99 S.Ct. at 1884WL885.
The Court found that such searches, done in a reasonable manner, may be conducted on less than probable cause because the “significant and legitimate security interests of the institution” outweighed the privacy ^interests of the inmates. Id. at 560, 99 S.Ct. at 1885. The Court also rejected the argument that such searches constituted a punishment in violation of an inmate’s rights.
Here, the appellant had already been placed under arrest for being a convicted felon in possession of a firearm.[2] A body cavity search would have been conducted when she was booked at Central Lockup, and the cocaine would have been found in her vagina at that time. Under Bell v. Wolfish, this search would be valid. Although Bell v. Wolfish concerned post-visit searches, the same considerations apply to the situation here and indeed are more compelling, where the inmate is first being placed in jail after having been free in the outside population. Thus, even had the officers not conducted the illegal body cavity search at the house, the cocaine would have inevitably been discovered at Central Lockup, especially given the fact that the officers had information that cocaine might be found in the appellant’s vagina. Thus, we find the trial court correctly denied the motion to suppress the cocaine seized from the appellant’s vagina. This assignment of error has no merit.
Accordingly, for the above reasons, the appellant’s conviction and sentence are affirmed.

AFFIRMED.

ARMSTRONG, J., concurs in the result.
JONES, J., dissents with written reasons.

. Writ denied 94-0580 (La. 4/29/94), 637 So.2d 461.

. The officers had probable cause to believe she was in constructive possession of a firearm in the bedroom where she and Cole were found, and she admitted she had a prior conviction for possession of cocaine.