**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

ANDY NELSON KING,

        Defendant - Appellant.

Case No. 05-6399
(D.C. NO. CR-05-107-M)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **SEYMOUR**, Circuit Judge, and **ROBINSON**, District Judge.[**]

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant Andy Nelson King was convicted of possession of pseudoephedrine with knowledge that it would be used to manufacture methamphetamine in violation of

---

[*]This order and judgment is not binding precedent, except under the doctrine of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]Honorable Julie A. Robinson, U.S. District Judge, District of Kansas, sitting by designation.

21 U.S.C. § 841(c)(2), and possession of 20 grams of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court sentenced defendant to 120 months' imprisonment. Defendant appeals the district court's denial of his motion to suppress. Defendant challenges the validity of the initial traffic stop, arguing that Undersheriff King lacked reasonable suspicion to believe that criminal activity had occurred, was occurring, or was about to occur. We exercise jurisdiction under 28 U.S.C. § 1291. We affirm.

## I.     Background

The district court conducted a suppression hearing and made detailed findings of fact that are supported by the record but not germane to this court's decision.[1] On May 16, 2005, Undersheriff Tim King of Cotton County, Oklahoma received information from a proven reliable source that she had witnessed a tall Native American or Hispanic male purchasing certain items at a store, items that are commonly used to manufacture methamphetamine. The witness further reported to Undersheriff King that she had watched the man leave the store and get in a pickup truck. The witness followed this truck, maintained contact with King by cellular telephone, and gave King continuous contemporaneous information on the route and location of the truck. The witness also gave King a description of the truck. Based on this information, King waited for the truck at the intersection of Interstate 44 and Highway 36, near mile-marker 1 in

---

[1]After additional evidence was obtained, defendant moved to reopen the suppression hearing, and a second hearing was held. The district court reaffirmed its order denying defendant's motion to suppress.

Oklahoma.  When King located the truck based on the witness's description, he used his radar gun to measure its speed at 73 miles per hour in a 70 mile-per-hour zone.  King immediately activated his overhead lights and initiated a traffic stop.

In the course of the traffic stop, King identified the driver as Kris Deven Youngstedt, a white male not matching the description of the man observed by the witness, and identified the passenger as defendant Andy Nelson King, who did match the description of a tall Native American or Hispanic male.  During the course of the traffic stop, Youngstedt consented to a search of the truck.  The search yielded a bag of methamphetamine, as well as several boxes of Sudafed, several bottles of liquid Heet, thirteen cans of Prestone starting fluid, a gallon-size jug of Coleman camping fuel, tubing, a propane tank and camouflage clothing.  All of these items are ingredients or instruments that are frequently used in the manufacture of methamphetamine.

## II.    Standard of Review

We review a district court order denying a motion to suppress, accepting the district court's factual findings unless clearly erroneous, and viewing the evidence in the light most favorable to those findings.  *United States v. Botero-Ospina*, 71 F.3d 783, 785 (10th Cir. 1995) (citing *United States v. McSwain*, 29 F.3d 558, 560 (10th Cir. 1994); *United States v. Pena*, 920 F.2d 1509, 1513 (10th Cir. 1990)).  We review the district court's determination of reasonableness under the Fourth Amendment *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

The law pertaining to traffic stops is well established. *United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *United States v. Whren*, 517 U.S. 806, 809–10, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996). Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest, we analyze such stops under the principles articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995), *cert. denied*, 518 U.S. 1007, 116 S. Ct. 2529, 135 L. Ed. 2d 1052 (1996). "To determine the reasonableness of an investigative detention, we make a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry*, 392 U.S. at 20, 88 S. Ct. at 1879).

In this case, we need only to address the first inquiry—whether Undersherriff King's initial stop of the vehicle was justified. Because petitioner concedes that Undersheriff King's subsequent conduct was reasonably related in scope to the circumstances which justified the initial stop, we need not address the second inquiry under *Terry*. *See* Appellant's Brief at 5–6.

**III.    Analysis**

A traffic stop is valid under the Fourth Amendment when probable cause or reasonable articulable suspicion exists to believe a traffic violation has occurred. *DeGasso*, 369 F.3d at 1143 (citing *Whren*, 517 U.S. at 810, 116 S. Ct. at 1772 (probable cause); *Botero-Ospina*, 71 F.3d at 787 (reasonable articulable suspicion)).  The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officer involved.  *Whren*, 517 U.S. at 813, 116 S. Ct. at 1774.  The officer's subjective motives for stopping the vehicle are irrelevant to the inquiry.  *Id.* at 813, 116 S. Ct. at 1774 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); *Botero-Ospina*, 71 F.3d at 787.  "Our sole inquiry is whether this particular motorist violated 'any one of the multitude of applicable traffic and equipment regulations' of the jurisdiction."  *Botero-Ospina*, 71 F.3d at 787 (quoting *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S. Ct. 1391, 1400, 59 L. Ed. 2d 660 (1979)).

Under this standard, Undersherriff King was justified in his stop of the vehicle in which defendant was traveling.  Undersherriff King testified that using a radar gun, he measured the vehicle as traveling 73 miles per hour in a 70 mile-per-hour zone.  He further testified that he believed a traffic violation had occurred because of the vehicle's speed.[2]  After stopping the vehicle, Undersheriff King advised Youngstedt that he had stopped him for speeding, and that he was going to give him a warning for this traffic

_____

[2]Under Oklahoma law, "no person shall drive a vehicle on a highway at a speed in excess of the . . . maximum limit[]."  Okla. Stat. Ann. tit. 47, § 11-801(B).

infraction. While Undersheriff King further testified that he would have stopped the vehicle even if it had not been speeding based upon the information that he received from the witness, his subjective beliefs are irrelevant to the inquiry. Although the district court analyzed whether King had reasonable suspicion to stop the vehicle based on the information from the witness, "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994). Therefore, we find that because Undersherriff King had a reasonable articulable suspicion that a traffic violation had occurred or was occurring based on the speeding violation, the traffic stop did not violate the Fourth Amendment. The district court's denial of the motion to suppress was proper. The judgment is affirmed.

Entered for the Court


Julie A. Robinson
District Judge