**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 11, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

   Plaintiff - Appellee,

v.

THOMAS ANTHONY PEARCE, II,
a/k/a Thomas Anthony Pearce.

   Defendant - Appellant.

No. 23-5007
(D.C. No. 4:21-CR-00237-GKF-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MCHUGH**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Thomas Anthony Pearce, II, appeals the denial of his motion to suppress evidence obtained from a traffic stop that he claims violated the Fourth Amendment. Mr. Pearce argues the stop was not justified at its inception because there was no objectively reasonable basis to suspect he was engaged in criminal activity. Exercising jurisdiction under 28 U.S.C. § 1291, we discern no error in the district court's suppression ruling and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I**[1]

In the early morning hours of February 8, 2021, Corporal Robert Golliday of the Jenks Police Department was working the night shift, patrolling the city of Jenks, Oklahoma in his marked police cruiser. At around 2:00 a.m., he drove through one of Jenks's "distance neighborhoods," a residential area somewhat isolated from the rest of the city. R.II.14:18–15:7; SR.I.58–59. Corporal Golliday spotted a white Dodge Ram—which turned out to be Mr. Pearce's truck—parked in the driveway of a construction site on 131st Street, a main thoroughfare. There were no streetlights nearby, and the truck's headlights were off.

Corporal Golliday regularly patrolled the area, which was a recent target for burglaries, but he had never seen a car parked in that spot before. As he passed, Corporal Golliday shined an alley light, a bright light on the side of his patrol car, to see if anyone was inside the truck. He saw someone moving in the driver's seat. Corporal Golliday drove on for a few seconds to turn his cruiser around at a nearby T-intersection and investigate further. By the time Corporal Golliday turned around, the truck was already driving

---

[1] We derive these facts from the district court's recitation in its memorandum and order on the motion to suppress. Because, as we will explain, we consider testimony presented to the district court during its evidentiary hearing, *United States* v. *Fonseca*, 744 F.3d 674, 680 (10th Cir. 2014), we rely on the transcript from that hearing as well.

away, "accelerating down the road at high speed." SR.I.59. Corporal Golliday activated his overhead lights and signaled for the truck to stop. The truck eventually pulled over, after bypassing several places to safely stop. Corporal Golliday approached the truck and encountered Mr. Pearce in the driver's seat. B.P., later identified as a minor, was seated in the front passenger seat.

Because of information obtained during the stop, Mr. Pearce was arrested and then indicted in the Northern District of Oklahoma on various child pornography related offenses.[2] Before trial, Mr. Pearce moved to suppress under the Fourth Amendment "all evidence and material obtained directly and indirectly" from the traffic stop. SR.I.20. He argued, as relevant here, Officer Golliday lacked reasonable suspicion to initiate the stop.[3]

---

[2] The government charged Mr. Pearce with Coercion or Enticement of a Minor in violation of 18 U.S.C. § 2422(b); Production of Child Pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e); Possession of Child Pornography in Indian Country in violation of 18 U.S.C. §§ 2252(a)(4)(A) and 2252(b)(2); and Distribution of Marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). SR.III.5–8.

[3] In the district court, Mr. Pearce also urged suppression because the detention exceeded its permissible scope. He abandons that argument on appeal. Reply Br. at 3 ("[T]he only issue is whether there was reasonable suspicion to initiate the stop.").

The district court held an evidentiary hearing. Corporal Golliday testified about the circumstances of the traffic stop.[4] Mr. Pearce called no witnesses. The district court denied Mr. Pearce's suppression motion in a written order. The challenged evidence was admitted at Mr. Pearce's jury trial, where he was convicted on all charges.

This timely appeal followed.

## II

Mr. Pearce contends the district court erroneously denied his motion to suppress because Corporal Golliday lacked reasonable suspicion to initiate an investigatory stop. The district court rejected this argument and, on this record, so do we.

## A

We review a district court's denial of a motion to suppress by "view[ing] the evidence in the light most favorable to the determination of the district court." *United States* v. *Johnson*, 43 F.4th 1100, 1107 (10th Cir. 2022) (quoting *United States* v. *Santos*, 403 F.3d 1120, 1124 (10th Cir. 2005)). We accept the district court's factual findings unless they are clearly erroneous. *See United States* v. *Hammond*, 890 F.3d 901, 905 (10th Cir. 2018). "While the existence of reasonable suspicion is a factual

---

[4] Corporal Golliday also testified about the stop at Mr. Pearce's trial.

4

determination, the ultimate determination of the reasonableness of a search or seizure under the Fourth Amendment is a question of law reviewed de novo." *United States* v. *Fonseca*, 744 F.3d 674, 680 (10th Cir. 2014) (quoting *United States* v. *White*, 584 F.3d 935, 944 (10th Cir. 2009)).

### B

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Interactions between police and citizens generally fall into one of several categories: "consensual encounters, investigative stops, and arrests." *Oliver* v. *Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). The stop at issue here was an investigative detention. "An investigative detention, which is also referred to as a *Terry* stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause." *Id.* To satisfy the Fourth Amendment, an investigative detention must be "justified at its inception," *United States* v. *King*, 990 F.2d 1552, 1557 (10th Cir. 1993) (quoting *Terry* v. *Ohio*, 392 U.S. 1, 20 (1968)), and "reasonably related in scope to the circumstances" prompting the stop, *Terry*, 392 U.S. at 20. This appeal concerns only the first requirement.

To be "justified at its inception," an investigative detention must be supported by reasonable suspicion—"'a particularized and objective basis' for suspecting legal wrongdoing." *United States* v. *Arvizu*, 534 U.S. 266, 273

(2002) (quoting *United States* v. *Cortez,* 449 U.S. 411, 417–18 (1981)). We apply this objective standard from "the perspective of [a] reasonable officer." *United States* v. *Guerrero,* 472 F.3d 784, 787 (10th Cir. 2007) (emphasis omitted) (quoting *United States* v. *Quintana-Garcia,* 343 F.3d 1266, 1270 (10th Cir. 2003)). While not an onerous standard, *United States* v. *Simpson,* 609 F.3d 1140, 1153 (10th Cir. 2010), reasonable suspicion demands "something more than an inchoate and unparticularized suspicion or hunch," *United States* v. *Hauk,* 412 F.3d 1179, 1186 (10th Cir. 2005) (quoting *United States* v. *Sokolow,* 490 U.S. 1, 7 (1989)). Instead, the "officer must point to specific, articulable facts." *Simpson*, 609 F.3d at 1147. Our reasonable suspicion analysis "requires a court to assess the totality of the circumstances, not to consider facts in isolation." *United States* v. *Young*, --- F.4th --- No. 21-2066, 2023 WL 3608101, at \*5 (10th Cir. May 24, 2023) (citing *United States* v. *Soto*, 988 F.2d 1548, 1555 (10th Cir. 1993) ("Whether . . . an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend upon any one factor, but on the totality of the circumstances.")). And "reasonable suspicion may exist even if it is more likely than not that the individual is not involved in any illegality." *United States* v. *McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011) (quoting *United States* v. *Albert,* 579 F.3d 1188, 1197 (10th Cir. 2009)).

6

## C

The district court concluded Corporal Golliday reasonably suspected

Mr. Pearce was involved in criminal activity "based on the time of day, the

unusual location of the vehicle, reports of crime in the area, and the

obviously suspicious behavior of driving away from Golliday at a high rate

of speed." SR.I.64. The district court made these factual findings:

- Mr. Pearce's truck was parked "near a construction site in an unlit area" at 2:00 a.m. SR.I.58–59.

- Corporal Golliday passed the truck in his marked police car.

- Corporal Golliday had never "seen a vehicle parked in that location on his regular patrols through the area." SR.I.59.

- The truck's lights were off, but when Corporal Golliday "turned on his side alley light" as he drove by, he "observed a person in the vehicle." SR.I.59, 64.

- There was a history of vehicle break ins and construction-site theft in the neighborhood.

- After Corporal Golliday passed the truck, Mr. Pearce "fled the area at a high rate of speed." SR.I.64. Based on Corporal Golliday's "training and experience," he believed Mr. Pearce "was driving faster than the posted speed limit of 45 miles per hour." SR.I.59.

"Considering the totality of the circumstances," the district court

determined Corporal Golliday "had reasonable suspicion to initiate an

investigative detention." SR.I.64.

Mr. Pearce makes three main arguments on appeal. First, he contends

the district court clearly erred in finding he was speeding. This appears to

7

be Mr. Pearce's only attack on the district court's factual findings. Second, Mr. Pearce challenges the district court's ultimate conclusion that, under the totality of the circumstances, reasonable suspicion supported the stop. Third, Mr. Pearce urges reversal under *United States* v. *Hernandez*, 847 F.3d 1257, 1268 (10th Cir. 2017). As we explain, these arguments are unavailing.

### 1

Mr. Pearce claims the district court's finding that he fled from Corporal Golliday "at a high rate of speed" is clearly erroneous. We disagree. We will reverse a district court's factual findings on clear-error review only if they are "without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Johnson*, 43 F.4th at 1107 (quoting *United States* v. *Morales*, 961 F.3d 1086, 1090 (10th Cir. 2020)). This standard is not satisfied here.

Corporal Golliday's testimony at the suppression hearing supports the district court's finding. Corporal Golliday testified he spotted Mr. Pearce's truck, turned his police cruiser around to investigate, and then "observed [the truck] leaving the area at a high rate of speed." R.II.21:20–24. Corporal Golliday thought the truck was exceeding the posted speed limit of 45 miles per hour. SR.I.59; R.II.22:20–24, 43:2–8. He admitted he did not use a radar

8

gun but testified about using his "training and experience" to estimate Mr. Pearce's speed. R.II.43:7–8. The district court credited Corporal Golliday's testimony that Mr. Pearce was speeding, and we see no reason to disturb that conclusion.

Mr. Pearce says we uphold stops based on speeding only when there is "more information in addition to the [officer's] estimate." Opening Br. at 14 (citing *United States* v. *King*, 209 F. App'x 760, 762 (10th Cir. 2006) (noting officer's use of a radar gun to measure a suspect's speed)). As an initial matter, the district court found Corporal Golliday "did not stop [Mr. Pearce] solely to investigate a speeding violation." SR.I.64. Instead, Corporal Golliday relied "on a range of factors," including the late hour, the truck's proximity to a construction site, and the truck's speed as it left the area to support the stop. SR.I.63–64. But even still, we have never suggested an officer's visual estimation of speed categorically cannot support a traffic stop at its inception. Rather, "[i]t's long been the case that an officer's visual estimation can supply probable cause to support a traffic stop for speeding in appropriate circumstances." *United States* v. *Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011).[5]

---

[5] We note the government does not argue Corporal Golliday's visual estimation of Mr. Pearce's speed established probable cause for the stop.

Perhaps recognizing this principle, Mr. Pearce argues it was not appropriate *in this case* to rely on Corporal Golliday's visual estimation. Mr. Pearce explains Corporal Golliday assessed his speed at night, in an area without streetlights, and when Corporal Golliday was himself "accelerating to catch up to Mr. Pearce." Reply Br. at 8–9. These facts do not render the district court's finding clearly erroneous. Even if we could say "there are two permissible views of the evidence" presented to the district court, "the factfinder's choice between them cannot be clearly erroneous." *United States* v. *Pikyavit,* 527 F.3d 1126, 1130 (10th Cir. 2008) (quoting *Anderson* v. *Bessemer City,* 470 U.S. 564, 574 (1985)). And in any event, Mr. Pearce *fled* from law enforcement.[6] Defense counsel conceded at oral argument he did "not specifically challenge[]" the district court's finding of flight as

---

The government simply contends Mr. Pearce's speed was part of the totality of the circumstances supporting reasonable suspicion.

[6] Mr. Pearce seems to contend it is significant he did not engage in "headlong" flight, meaning he did not "flee an *approaching* officer." Reply Br. at 9. Mr. Pearce cites no authority defining flight so narrowly, and we are aware of none. The Supreme Court has recognized "unprovoked flight upon *noticing* the police" is "evasive behavior" relevant to the reasonable suspicion analysis. *Illinois* v. *Wardlow*, 528 U.S. 119, 124 (2000) (emphasis added); *see also District of Columbia* v. *Wesby*, 583 U.S. 48, 59 (2018) (explaining suspects' "scattering and hiding" after noticing police could be factored into the totality of the circumstances).

10

clearly erroneous.[7] Oral Arg. 11:37–12:04.

**2**

Mr. Pearce next argues the totality of the circumstances does not support the district court's reasonable suspicion determination. We are not persuaded.

At the outset, we observe Mr. Pearce seems to proceed from an incorrect point of departure for the Fourth Amendment analysis. Reasonable suspicion "is based on the totality of the circumstances" and not on "each of an officer's observations in isolation." *United States* v. *Garcia*, 751 F.3d 1139, 1143 (10th Cir. 2014) (quoting *United States* v. *Rice*, 483 F.3d 1079, 1083 (10th Cir. 2007)); *Sokolow*, 490 U.S. at 9 ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion."). Mr. Pearce contests the significance of several facts

---

[7] Even if preserved, a clear-error challenge to the district court's finding of flight would fail. When Corporal Golliday first saw Mr. Pearce's truck, it was parked with its lights off. As the government highlighted at oral argument, Corporal Golliday wanted to investigate further but it took him "four to six seconds" to turn around. Oral Arg. 20:20–20:46. In that time, Mr. Pearce started to drive away "at a high rate of speed." R.II.21:20–24. No other cars were on the road, and Corporal Golliday was aware of nothing else that could have provoked Mr. Pearce's departure. R.II.23:8–16. From that, Corporal Golliday testified he believed Mr. Pearce "was trying to get away from the police." R.II.22:25–23:7. Under the circumstances, we cannot say the finding Mr. Pearce fled from law enforcement lacks factual support in the record.

found by the district court, contending these should not factor into the Fourth Amendment analysis because an innocent explanation attends to each.

For example, Mr. Pearce posits, even at 2:00 a.m., a person could "just as likely [have been] parked in the [construction site] driveway to protect the property" rather than vandalize it. Opening Br. at 16. When it comes to the reports of break-ins and theft in the area, Mr. Pearce counters an "individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable particularized suspicion that the person is committing a crime." Opening Br. at 13. Mr. Pearce minimizes the significance of his driving away from Corporal Golliday, explaining an "individual has a right to ignore the police and go about his business" when approached by law enforcement without reasonable suspicion or probable cause. Reply Br. at 9 (quoting *Illinois* v. *Wardlow*, 528 U.S. 119, 125 (2000)).[8]

---

[8] As a general principle, we do not disagree. *Wardlow*, 528 U.S. at 125 (holding "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." (quoting *Florida* v. *Bostick*, 501 U.S. 429, 437 (1991))). But the district court found Mr. Pearce fled, that factual finding is unchallenged, and "[f]light, by its very nature, is not 'going about one's business;' in fact, it is just the opposite." *Id.*

The Supreme Court has forbidden precisely "this sort of divide-and-conquer analysis." *Arvizu*, 534 U.S. at 274. Regardless of what we might make of any singular fact, the proper focus of the district court's inquiry, and ours, is the totality of the circumstances. Looking to the totality we have no trouble concluding, as did the district court based on its thorough factual findings, that "specific, articulable facts," *Simpson*, 609 F.3d at 1147, taken together, provided a "particularized and objective basis" to suspect Mr. Pearce of criminal activity, *Arvizu*, 534 U.S. at 273 (quoting *Cortez,* 449 U.S. at 417–18).[9] Mr. Pearce has not meaningfully argued otherwise.

**3**

Finally, Mr. Pearce urges reversal under *United States* v. *Hernandez*, where we affirmed the district court's suppression ruling following an investigative stop. 847 F.3d 1257 at 1268. According to Mr. Pearce, the facts in *Hernandez* are analogous to those presented here, and we should find his stop, like the one in *Hernandez*, was based only on "inchoate suspicions and

---

[9] The district court suggested Corporal Golliday had reasonable suspicion to stop Mr. Pearce even without considering his flight. SR.I.64 ("These facts alone would have merited further investigation and Golliday would have been permitted to approach the vehicle to conduct a limited investigation even if defendant had not driven away."). We find Mr. Pearce's flight significant in our *de novo* reasonable-suspicion analysis and factor it into the totality of the circumstances.

unparticularized hunches." Reply Br. at 6 (quoting *Hernandez*, 847 F.3d at 1270). We disagree because *Hernandez* is distinguishable.

In *Hernandez*, police stopped the defendant in the early evening as he walked outside the fenced perimeter of a construction site near an intersection in downtown Denver. *Hernandez*, 847 F.3d at 1260–61. The defendant filed a motion to suppress evidence obtained during the stop, arguing the officers lacked reasonable suspicion. *Id.* The government responded the officers had reasonable suspicion because:

> (1) Mr. Hernandez was walking next to a construction site which had been the previous target of construction material thefts; (2) he was walking in a "high crime" area (with regard to theft, gang activity, and drug dealing); (3) he was not using the sidewalk located on the other side of the street; and (4) he was wearing all black clothing and carrying two backpacks.

*Id.* at 1268. The district court rejected the government's arguments and granted the defendant's motion. *Id.* at 1261. The panel likewise found these justifications insufficient and affirmed. *Id.* at 1270.

True, Mr. Pearce and Mr. Hernandez were both stopped near construction sites that had a recent history of theft known to law enforcement. But Mr. Hernandez walked on public property *outside* a construction site fence, *id.* at 1260, while Mr. Pearce admits he was parked on a partially built driveway *within* a construction site. Opening Br. at 20; R.II.16:5–17:8. Mr. Hernandez was walking near an urban intersection before

14

8:00 p.m., *Hernandez*, 847 F.3d at 1261, while Mr. Pearce was sitting in his parked truck in a remote neighborhood at 2:00 a.m., SR.I.59, 64; R.II.14:16–15:2. And unlike Mr. Pearce, Mr. Hernandez did not flee when he saw police. *Hernandez*, 847 F.3d at 1261 (explaining officers drove next to Mr. Hernandez as they spoke to him, and when they asked him to stop, he complied).[10] Thus, on the record before us, we are not persuaded to reverse under *Hernandez*.

---

[10] Mr. Pearce relies on several other cases, but none advance his cause. *Reid* v. *Georgia* is factually distinguishable. 448 U.S. 438, 440–41 (1980) (finding no reasonable suspicion where a suspect arrived on a flight from a location known to be a source of cocaine, the flight arrived early in the morning, the suspect had limited luggage, and the suspect and his companion appeared to "conceal the fact that they were traveling together."). So is *United States* v. *Davis*. 94 F.3d 1465, 1470 (10th Cir. 1996) (finding no reasonable suspicion where government "fail[ed] to show any specific factual basis for suspecting" the defendant of a "particular crime" based on the defendant walking in a high crime area with his hands in his pockets and defendant's choice to continue "walking in the same direction and same manner" after officers instructed him to stop (emphasis omitted)). *United States* v. *Salazar* seems to undermine Mr. Pearce's position. 609 F.3d 1059, 1061 (10th Cir. 2010) (finding potentially innocuous conduct, like pulling into a closed business next to an unoccupied commercial vehicle, supported reasonable suspicion in the totality of the circumstances after the suspect attempted to evade officers).

15

**III**

We AFFIRM the district court's denial of Mr. Pearce's motion to suppress.

ENTERED FOR THE COURT

Veronica S. Rossman
Circuit Judge